UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


ANNA M. EVANS,                    )
                                  )
            Plaintiff,            )
                                  )
v.                                )        No. 3:10-CV-67
                                  )        (VARLAN/GUYTON)
MICHAEL J. ASTRUE,                )
Commissioner of Social Security,  )
                                  )
            Defendant.            )


## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal

Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding

disposition by the District Court of the Plaintiff's Motion for Summary Judgment [Doc. 9] and the

Defendant's Motion for Summary Judgment [Doc. 11].  Plaintiff Anna M. Evans ("Plaintiff") seeks

judicial review of the decision by Administrative Law Judge ("ALJ") K. Dickson Grissom to deny

her benefits, which was the final decision of the Defendant Michael J. Astrue, Commissioner of

Social Security ("the Commissioner").

On January 9, 2003, the Plaintiff filed an application for supplemental security income

("SSI").[1]  [Tr. 62-63].  On the application, the Plaintiff alleged a period of disability which began

---

[1]An application in the record indicates that the Plaintiff applied for Disability Insurance
Benefits ("DIB").  It appears the Agency determined that the Plaintiff qualified only for SSI and
not DIB.  [Tr. 62-63].

on January 1, 2000.  [Tr. 62].  On February 16, 2005, ALJ Grissom held a hearing, and issued a decision finding the Plaintiff "not disabled."  [Tr. 577-608; 30].  On September 28, 2007, the Appeals Council granted the Plaintiff's request for relief because the record on which the ALJ issued his decision could not be located.  [Tr. 46-47].  Pursuant to the remand order, ALJ Grissom held another hearing on December 19, 2007.  [Tr. 611-32].  On February 6, 2008, the ALJ found that the Plaintiff was not under a disability from January 23, 2003, through the date of the decision.  [Tr. 26]. On January 9, 2010, the Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 5-7].  The Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g).

## I.  ALJ FINDINGS

The ALJ made the following findings:

1.  The claimant has not engaged in substantial gainful activity since January 23, 2003, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).

2.  The claimant has the following severe combination of impairments: migraine headaches; restless leg syndrome (RLS); seizure disorder; depressive disorder not otherwise specified (NOS); and rule out anxiety disorder (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work except she is precluded from performing any climbing and any work around hazards such as dangerous and moving machinery or unprotected heights.  In addition, the claimant is limited to performing simple, repetitive non-detailed tasks where co-worker and public contact is casual and infrequent; where supervision is direct and non-confrontational; and where changes in the workplace are infrequent and gradually introduced.

5.      The claimant is able to perform past relevant work as a general cleaner and as a gasket cutter. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965). However, in giving the claimant every benefit of the doubt, the undersigned will proceed with the sequential evaluation.

6.      The claimant was born on June 15, 1954 and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.      The claimant has limited education and is able to communicate in English (20 CFR 404.1564).

8.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR 404, Subpart P, Appendix 2).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 416.968).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since January 29, 2003, the date the application was filed (20 CFR 416.920(g)).

[Tr. 19-26].


## II.     DISABILITY ELIGIBILITY

An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is

not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

Plaintiff bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.    STANDARD OF REVIEW

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings.  Longworth v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004).  If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed.  Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently.  Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).  On review, the Plaintiff bears the burden of proving his entitlement to benefits.  Boyes v. Sec'y of Health & Human Serv., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).


## IV.    ANALYSIS

### A.    The Plaintiff's Physical Limitation

The Plaintiff alleges that the Residual Functional Capacity ("RFC) finding is not supported by substantial evidence and that a consultative examination should have been ordered.

### 1.    RFC

The Plaintiff argues that the ALJ's RFC was not supported by substantial evidence.  [Doc.

9 at 7].  Specifically, the Plaintiff contends that the ALJ's physical RFC was not supported by any limitations opined by a physician in the record.  [Doc. 9 at 8-10].  The Commissioner asserts that the ALJ's RFC finding is well-supported, specifically, that the assumptions made by  Plaintiff are misplaced.  [Doc. 11 at 9-10].

An ALJ is specifically charged with determining a claimant's RFC based on the evidence contained in the entire record.  See 20 C.F.R. § 416.946(c).  SSR 96-5p states that a RFC finding is not a medical issue, but rather, that "an adjudicator *may* decide to adopt all of the opinions expressed in a medical source statement, a medical source statement *must not* be equated with the administrative finding known as the RFC assessment."  Moreover, the Court of Appeals for the Sixth Circuit in Her v. Commissioner of Social Security, held that "[i]f a claimant does not secure an official 'Residual Functional Capacity' assessment by a medical or psychological examiner, and simply relies on other evidence to prove his impairments, it does not follow that the Commissioner subsequently must provide the RFC at step five."  203 F.3d 388, 391 (6th Cir. 1999).  Therefore, the regulations do not indicate that a medical source assessment of the Plaintiff is required for the ALJ to make an RFC determination.

The Plaintiff's contention that an RFC determination is a medical assessment on which the ALJ must rely is not supported by the regulations.  In this case, the ALJ determined that the Plaintiff had the RFC to perform medium work[2] except "she is precluded from performing any climbing and any work around hazards such as dangerous and moving machinery or unprotected heights."  While the Plaintiff asserts that the only evidence of her physical RFC were two evaluations conducted in

---

[2]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567.

2003 by non-examining state agency physicians, she fails to present evidence indicating that her condition has worsened since the 2003 assessments. In January 2003, one non-examining source opined that the Plaintiff's physical impairments were not severe. [Tr. 430]. In May 2003 another non-examining source opined that the Plaintiff's severe impairment(s) would improve to non-severe in twelve months. [Tr. 435]. The second report found that the Plaintiff's severe impairment was the result of neck spasms, but the Plaintiff's impairment would improve to non-severe within twelve months of treatment. The Court agrees with the Commissioner that while the Plaintiff may have more conditions which require monitoring, the Plaintiff failed to demonstrate that she is disabled, or unable to perform light or medium work.

Sam A. Kabbani, M.D., the Plaintiff's treating physician from January 2003 through at least 2007, indicated that the Plaintiff was responding to treatment for migraines. [Tr. 535]. While the Plaintiff testified that she gets migraines almost daily and must lay down to treat the migraine, Dr. Kabbani noted that the Plaintiff indicated that medications were helpful. [Tr. 620; 539]. While the Plaintiff points to a May 2006 MRI, which indicated "bright signal intensity lesions in periventricular white matter, most likely related to small vessel ischemia, as well as an incidental finding of a minimal mucosal thickening in the right maxillary antrum," William R. McKissick, M.D., stated that it was "[n]ormal MRI of the brain otherwise." [Tr. 536]. Subsequently, Dr. Kabbani identified no physical limitations imposed by the MRI findings. He instead opined that the Plaintiff was "fine and stable," and specified nothing abnormal about the Plaintiff's physical examination.

To support the proposition that her condition worsened since 2003, the Plaintiff points to various medical records. The Plaintiff cites to Park Med Ambulatory Care records received after

the state agency reviews. The records noted the Plaintiff indicated difficulty with left facial droop, right hand pain, migraine headaches, facial numbness and edema, chronic low-back pain, hypertension, rib pain, chronic abdominal pain, atypical chest pain, and bilateral hip pain. [Tr. 480-492; 523-533]. In addition, the Plaintiff points out that she was treated by Chad E. Potteiger, D.O., from August 2005 through February 2006 for complaints of abdominal pain and change of bowel habits. An upper endoscopic evaluation was performed and biopsies revealed chronic and endocrine cell hyperplasia. [Tr. 520].

These subjective complaints and endoscopy results, however, are undermined by the other evidence in the record. In treatment notes, Dr. Potteiger did not indicate this condition would cause the Plaintiff any physical limitations. For example, when Dr. Kabbani ordered an abdominal ultrasound performed in 2007, the results were normal. In a follow-up examination after the ultrasound, Dr. Kabbani did not indicate any physical limitations suffered by the Plaintiff, and noted nothing abnormal in her physical examination. [Tr. 535]. Moreover, the Plaintiff testified at the hearing that she does not suffer chest pain "as bad." [Tr. 624].

The Plaintiff also asserts that the ALJ must consider her allegations of pain. In this case, the ALJ did not find the Plaintiff's subjective allegations of pain credible. When asked to describe her daily activities, the Plaintiff stated she made coffee, would go to the mailbox, occasionally take out the trash, and would "lay out something for supper." [Tr. 194]. At the hearing, the Plaintiff referenced that she could vacuum. [Tr. 618]. While the Plaintiff argues that her physical condition worsened from the 2003 non-examining physician assessments, these activities support the ALJ's determination that her allegations of pain were not entirely credible. The Court must give significant deference to the ALJ's credibility finding. Cruse v. Commissioner of Social Security, 502 F.3d 532,

542 (6th Cir. 2007) ("[A]n ALJ's credibility determinations about the claimant are to be given great weight . . .").

This Court find that there is substantial medical evidence that the Plaintiff does not suffer from physical limitations and is capable of performing medium work.

## 2. Consultative Examination

In addition, the Plaintiff argues that the ALJ committed error by failing to order a consultative examination to evaluate the effects of the Plaintiff's severe impairments on her ability to work.

The Plaintiff cites 20 C.F.R. § 416.919a(b), which explains that a "consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the applicant's] claim." In considering the necessity of a consultative examination, the ALJ should consider the claimant's allegation. 20 C.F.R. § 416.919a(a)(1). The plain language of the statute clearly places the decision to order a consultative examination within the discretion of the ALJ. In addition, the regulation states that a consultative examination may be purchased when there is not sufficient evidence to make a final decision on the claim.

In this case, there was sufficient evidence on the record to support the ALJ's physical RFC determination. The objective medical evidence pertaining to the Plaintiff's physical limitations produced normal results. The ALJ noted that while the Plaintiff frequently sought treatment for hip pain, x-rays of both hips revealed no abnormality. [Tr. 44; 532]. The Plaintiff testified that she must stack groceries "[her] arms . . . to get them in the best them in the best way [she] can" due to right hand and arm pain. [Tr. 619]. However, x-rays performed of her right hand in May 2004

produced normal results. [Tr. 203]. Although the Plaintiff references records that indicate her history of a stroke, a dual isotope scan performed in July 2005 revealed "no ischemia, normal regional left ventricular contractility, and normal ejection fraction of 78%." [Tr. 530].

Moreover, the ALJ noted that he placed significant limitations on the Plaintiff's ability to perform medium work based on her seizure disorder. These limitations did not result in the ALJ rendering a medical opinion, as the Plaintiff argues, but rather, were limitations the ALJ found necessary based on the medical evidence of record. The ALJ, contrary to the Plaintiff's argument, used physician diagnoses and opinions when placing limitations on the Plaintiff's ability to work. Therefore, there is substantial evidence in the record to support the ALJ's physical RFC determination without ordering a consultative examination.

Accordingly, this Court concludes that the ALJ's physical RFC finding was supported by substantial evidence of the record and the decision not to order a consultative examination was not an error.

## B.     The Plaintiff's Mental Limitations

The Plaintiff also argues that the ALJ's RFC determination is not supported in regard to the Plaintiff's mental limitations. [Doc. 10 at 11]. Specifically, the Plaintiff contends that the evidence in the record demonstrates she is more mentally limited than found by the ALJ. [Doc. 10 at 11]. The Commissioner asserts that the evidence the Plaintiff cites is unconvincing and that she ignores evidence not favorable to her claim. [Doc. 12 at 11].

The Plaintiff again contends that the ALJ should have requested a consultative examination to determine the Plaintiff's mental impairments. A claimant must prove to the Social Security

Administration ("SSA") that she is disabled in order to receive benefits. 20 C.F.R. § 404.1512(a). The claimant "must bring to the [the SSA's] attention everything that shows that [she is] disabled." 20 C.F.R. § 404.1512(a). Additionally, "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." Yuckert, 482 U.S. at 146 n.5 (1987).

While a claimant has to burden of proving her entitlement to benefits, an ALJ "may ask for and consider the opinion of a medical or psychological expert concerning whether [the claimant's] impairments(s) could reasonably be expected" to cause the alleged symptoms." 20 C.F.R. § 404.1529(b). As with the Plaintiff's physical limitations, it is within the discretion of the ALJ to order a consultative examination "when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision" on the claim. 20 C.F.R. § 404.1519a.

There is limited evidence of the Plaintiff's mental health treatment in the record. The ALJ found that the Plaintiff "attended an initial mental health screening assessment in September 2002, but has not had any other mental health treatment." [Tr. 23]. The Plaintiff cites this September 2002 evaluation to support her argument that the ALJ did not account for all of her mental limitations. Further, the September 2002 report noted that the Plaintiff was only moderately limited in the area of daily living, interpersonal functioning, concentration, task performance, and pace, and adaptation change. [Tr. 292-314].[3]

In particular, the Plaintiff notes that the September 2002 mental assessment indicated a GAF score of 50, and that score is a significant piece of evidence that she suffers serious mental

---

[3]Though the Court has considered the Plaintiff's argument, the Court notes that this evidence predates the application date of January 29, 2003, and thus, its probative value is, at least somewhat diminished. See 20 CFR § 416.202.

problems.[4]  [Tr. 292-314].  A GAF score is not raw medical data, but rather, is a "clinician's subjective rating of an individual's overall psychological functioning." Kennedy v. Astrue, 247 F. App'x 761, 766 (6th Cir. 2007).  In addition, the Commissioner "has declined to endure GAF scores for use in Social Security and SSI disability programs." Id. (internal citations and quotations omitted).  Moreover, the consultative examiner and the reviewing state psychologist did not see the Plaintiff's mental limitations as so limiting.

While the Plaintiff argues that her mental limitations were more limited than found in the two state-agency assessments, she does not specifically assert what additional limitations were warranted in the ALJ's finding.  The ALJ limited the Plaintiff to simple, repetitive, non-detailed tasks with limited co-worker and public contact.  [Tr. 21].  Morever, the ALJ expressed concern regarding the Plaintiff's interaction with supervisors and indicated that she could only work in an environment where changes were infrequent and gradually introduced.  [Tr. 21].

The ALJ's finding regarding the Plaintiff's mental limitations was supported by substantial evidence in the record.  During the consultative examination in June 2003, William J. Kenney, Ph.D., found the Plaintiff moderately limited in terms of adaptation, and limited in terms of concentration, persistence, and pace.  However, Dr. Kenney opined that the Plaintiff was not significantly limited in both her ability to understand and remember and in her ability for social interaction.  [Tr. 440].  In addition, Victor A. Pestrak, P.h.D, a reviewing state agency psychologist, opinied that: the Plaintiff could carry out simple and some detailed tasks; attention, concentrate,

_____

[4]A GAF of 50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning.

persistence, and pace would be adequate; and the Plaintiff could work adequately with others, but should not work with the public. [Tr. 441-451].

There was nothing in the record indicating that the ALJ should order an additional consultative examination. The Plaintiff points out that Dr. Kabbani treated her from March 2005 through September 2007, and noted that during this period the Plaintiff suffered from forgetfulness, anxiety, and memory loss. [Tr. 510-513, 534-547]. However, Dr. Kabbani's treatment notes in March 2006 indicate that the Plaintiff was "doing better," and in September 2006, he noted that the Plaintiff was "doing fine and stable." [Tr. 535, 537]. In September 2006, Dr. Kabbani's treatment plan was to keep the Plaintiff on the same medication. [Tr. 535]. Dr. Kabbani's treatment notes do not necessitate an additional mental consultative examination. On the contrary, Dr. Kabbani's treatment notes indicate that the Plaintiff's mental limitations were controlled with medication and were not severe enough to require inpatient mental health care or a referral to a mental health provider. Moreover, at the hearing, the Plaintiff testified that her memory had improved. [Tr. 590]. Nothing in the record suggests that the Plaintiff suffered from debilitating forgetfulness, anxiety, or memory loss.

In this case, the ALJ considered all the evidence in the record, and the evidence as a whole is sufficient to support the ALJ's RFC determination regarding the Plaintiff's mental limitations and the ALJ's decision not to order an additional consultative psychological examination. Thus, the ALJ was not required to order an additional consultative psychological examination.

## C. Additional Evidence

The Plaintiff argues that, based on additional evidence submitted to the Appeals Council, her case should be remanded under sentence six to consider this new evidence. [Doc. 10 at 13]. Specifically, the Plaintiff contends that evidence obtained during a six month period of time between January 2008 and June 2008 indicates more severe mental limitations than previously diagnosed. [Doc. 10 at 13-14]. The Commissioner responds that the Plaintiff does not meet the requirements for obtaining a sentence six remand. [Doc. 12 at 12]. In particular, the Commissioner asserts that the Plaintiff has neither demonstrated the additional evidence is material, nor has she shown good cause for her failure to submit such evidence during the administrative proceeding. [Doc. 12 at 13].

According to the sixth sentence of 42 U.S.C. § 405(g), remand is appropriate, where: (1) a party submit additional evidence to the Appeals Council after the ALJ renders the "final decision of the Secretary" or to the reviewing court; (2) the party proves that the additional evidence is new (3); the party proves that the additional evidence is material; and (4) the party shows good cause for his or her failure to submit the additional evidence during the administrative proceedings.

The party seeking a sentence six remand bears the burden of establishing the remand requirements. Lewis v. Astrue, No. 3:07CV145, 2008 WL 4186325, *8 (S.D. Ohio September 2, 2008). New evidence is material if it is both "relevant and probative of an applicant's condition prior to the Commissioner's decision," and there is a "reasonable probability that the Commissioner would have reached a different decision if the evidence had been considered." Id. New evidence that relates to an issue fully considered by the ALJ is cumulative and not sufficient to warrant a remand. Smith v. Comm'r of Soc. Sec., No. 1:07CV199, 2008 WL 2311561, at *6 (S.D. Ohio June 4, 2008).

Regarding good cause, the Court of Appeals for the Sixth Circuit has held that it will take a "hard line" on the issue of good cause. Oliver v. Sec'y of Health & Human Servs., 804 F.2d 964, 966 (6th Cir. 1986). "[G]ood cause means more than simply that the evidence in question did not exist at the time of the ALJ's decision." Haney v. Astrue, No. 5:07CV188-J, 2009 WL 700057, *6 (W.D. Ky. March 13, 2009). Accordingly, good cause "is demonstrated by a showing that something extrinsic to the claimant's prosecution of his claim and beyond his control prevented timely production of evidence." Id.

In this case, a remand is not warranted due to the new evidence of her 2008 mental health treatment at Cherokee Health Systems ("Cherokee"). As a result of the intake performed at Cherokee, the Plaintiff was diagnosed with bipolar affective disorder, severe, with psychotic features; panic disorder; rule out depression; with a GAF of 50. [Tr. 551]. From this diagnosis, the Plaintiff contends that the new evidence is material because the "GAF noted in these new records is identical to the GAF noted by Peninsula Health . . . and reflects serious mental limitations." [Doc. 10 at 14]. This "new evidence" noted by the Plaintiff was already established in the record before the ALJ at the administrative hearing and, thus, relates to an issue fully considered by the ALJ. In addition, this is not the type of evidence that creates a reasonable probability that the ALJ would come to a different conclusion regarding the Plaintiff's disability, because he considered similar evidence during the hearing. Further, the new evidence indicates that the Plaintiff was treated by Dr. Goudelock after the intake, and his treatment notes report the Plaintiff's significant improvement when treated with Abilify. Accordingly, the additional evidence submitted by the Plaintiff is not material.

Moreover, even if the additional evidence was material, the good cause requirement is not satisfied. The Plaintiff has not identified the reason she did not seek mental health treatment between the date of her application in January 2003 to the date of her intake at Cherokee in January 2008. The Plaintiff only asserts that the evidence was not in existence at the time of the hearing, however, this is not sufficient to establish the "good cause" requirement. In addition, the Plaintiff has not provided any explanation that something beyond her control prevented timely production of evidence. Thus, the Court finds the Plaintiff has not demonstrated good cause for not obtaining mental health treatment prior to the administrative hearing.

## V.    CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED**[5] that the Commissioner's Motion for Summary Judgment **[Doc. 11]** be **GRANTED**, and Plaintiff's Motion For Summary Judgment **[Doc. 9]** be **DENIED**.

Respectfully submitted,

_____s/ H. Bruce Guyton_____
United States Magistrate Judge

---

[5]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).